### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MELINDA R.,[1]                                          Case No. 2:23-cv-1090

      Plaintiff,                                      Morrison, J.
                                                        Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Melinda R. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. The undersigned concludes that the Commissioner's finding of non-disability should be AFFIRMED.

### I. Summary of Administrative Record

On February 27, 2020, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning February 28, 2018. (Tr. 15). Plaintiff alleges disability based on a combination of a seizure disorder, night terrors, sleep disturbance, problems eating, anxiety, anger issues, suicidal tendances, depression, hallucinations, and memory loss. (Tr. 64). When Plaintiff's applications were denied at the initial and reconsideration levels, she timely requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 11, 2022, Plaintiff appeared by telephone with counsel and gave testimony before ALJ Kimberly

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

Cromer; a vocational expert ("VE") also testified. (Tr. 35-61). On February 27, 2022, the ALJ issued an adverse written decision. (Tr. 12-34). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Through counsel, Plaintiff filed this judicial appeal.

Plaintiff was 41 years old on the date of her alleged onset of disability, and remained in the "younger individual" age category on the date of the ALJ's decision. She has a high school education and past relevant skilled work as a retail store manager, performed at the medium exertional level. She lives in a house with her daughter, her son, and their father. (Tr. 50).

The ALJ determined that Plaintiff has the following severe impairments: "seizure; obesity; cognitive impairment and posttraumatic stress disorder." (Tr. 18). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) The ALJ next determined that Plaintiff's RFC would allow her to perform light work subject to the following limitations:

> no climbing of ladders, ropes, or scaffolds; no commercial driving; no work at unprotected heights; no work around hazardous machinery; she should avoid concentrated exposure to extreme cold, heat, humidity, wetness and pulmonary irritants; she should avoid concentrated exposure to vibration; she should avoid concentrated exposure to loud noises (i.e. construction level noise) and should have more of an office level noise environment; she should avoid concentrated exposure to flashing strobing lights, such as you might find at a concert; mentally, the claimant is limited to simple routine work; no tandem work; instructions should be of more verbal or demonstration nature; no work with the general public as part of routine job duties; only occasional interaction with coworkers and supervisors; work should be of a variable rate, meaning no fast paced production assembly line work where the machine would be setting the pace; end of day work goals versus strict hourly production requirements; and only occasional changes in the work setting and only occasional decision making.

(Tr. 22).

2

Based on the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform her prior work, but determined she still could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of Warehouse Checker, Marker, and Office Helper. (Tr. 30). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id.*)

In her Statement of Errors, Plaintiff seeks reversal on grounds that the ALJ failed to include a mental RFC limitation to "superficial contact."

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

3

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

## B. The Relevant Mental Health Evidence

In her sole claim, Plaintiff argues that the ALJ erred when she did not limit Plaintiff to "superficial" interactions but instead determined that Plaintiff could engage in "occasional interaction with coworkers and supervisors." This claim is based on the opinions of two reviewing psychologists. One offered a limitation to "superficial" interactions while the second opined she was limited to "occasional" interactions. Plaintiff asserts that the ALJ was required to offer greater explanation than she articulated for finding an "occasional interaction" limitation, and that remand is required based on her failure to adequately explain her decision. (Doc. 8 at 14, PageID 505, citing SSR 96-8p).

The court reads the ALJ's decision as a whole. Therefore, the undersigned reviews all mental health evidence relevant to the issue of social interactions considered by the ALJ. At Step 3 of the sequential analysis, the ALJ discussed the evidence concerning Plaintiff's abilities to relate to and work with supervisors, coworkers, and the public.

> In addition to [reports of] limited social interaction and social withdrawal, the claimant has endorsed problems getting along with other people because she was paranoid about them, they usually pissed her off and she wanted to punch them (Exs. 3E/5, 8; 6F/6). She has claimed she stayed at home because she did not like to go to public places because people "piss her off and I tell them" (Ex. 3E/5). Nevertheless, she spent time with her kids and their dad watching television and cooking every day (Ex. 3E/5). Although she presented with indications of anxiety including fast and pressured conversational speech, tense vocalizations, tense posture, apprehensive facial expression, and visibly shaking at her psychological evaluation, the claimant was described as cooperative, and rapport was adequately established with the consulting psychologist. She also had consistent eye contact during the evaluation (Ex. 6F/3-4). Further, the evidence in the record, including her testimony at the hearing, shows that she was able to interact independently, appropriately, effectively, and on a sustained basis with other individuals, and there is no indication that she has not been socially appropriate with treating or consulting sources. Moreover, she presented to the hearing with no appreciable social difficulty. She was

5

polite, cooperative, and did not evidence any problems interacting with the other participants or answering questions.

(Tr. 20). Later in her opinion, the ALJ evaluated the consistency of Plaintiff's subjective statements about her level of impairment, including social interaction impairment, and concluded that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23).[2]

Although Plaintiff's appeal focuses on one psychological opinion, three other psychologists also provided opinions. On September 25, 2020, examining psychologist Sarah Barwick, Psy.D. authored a consultative examination ("CE") report based primarily on her clinical examination. (Tr. 403-408). Dr. Barwick's report focuses on the "Paragraph B" criteria used at Step 3 of the sequential process. For example, Dr. Barwick noted that Plaintiff was "highly anxious which contributed to concentration problems during the evaluation." (Tr. 407). Dr. Barwick did not offer definitive opinions about Plaintiff's functional limitations. Instead, she stated that Plaintiff's anxiety "may impact social engagement in work settings including social avoidance," citing Plaintiff's self-report of "limited social interaction and social withdrawal." (Tr. 408). And she stated that Plaintiff "presented as emotionally overwhelmed when discussing current pressures which may impact her mood stability in a competitive work setting." (*Id.*)

Two reviewing psychologists, Mary Hill, Ph.D., and Irma Johnston, Psy.D., considered the CE report and other evidence. They offered RFC opinions using a standard Psychiatric Review Technique Form ("PRTF") for consideration at Steps 4 and 5 of the sequential analysis. They mostly found moderate limitations, but found no

---

[2]Plaintiff does not challenge the ALJ's adverse assessment of her subjective complaints. That assessment both supports the ALJ's conclusion that Plaintiff is able to interact occasionally in a workplace setting, and undermines any claim of greater mental limitations in interacting with others.

limitations at all in Plaintiff's ability to understand, remember, or apply information. (*See* Tr. 66).

In the area of social interactions, both Drs. Hill and Johnston found moderate limitations. (See Tr. 66, 96). In response to more specific PRTF queries, Dr. Hill found "marked" limitation in her ability to interact with the general public whereas Dr. Johnston found only "moderate" limitation in that area. (Tr. 69, 89). Both opined Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, as well as in her ability to get along with coworkers without distracting them or exhibiting behavioral extremes. By contrast, they agreed she is not significantly limited in her ability to ask simple questions or request assistance, or in her ability to maintain socially appropriate behavior. (Tr. 69, 89). Asked to define Plaintiff's social interaction limitations in narrative form, Dr. Hill opined that she is highly anxious, but "[c]apable of *superficial interactions* [with] supervisors and co-workers. No customer service duties." (Tr. 69, emphasis added). On reconsideration, Dr. Johnston opined that Plaintiff "retains the ability to perform work in an environment with no contact with the public and only *occasional interactions* with coworkers and supervisors." (Tr. 89, emphasis added; *see also* Tr. 90).

A fourth professional, neuropsychologist James Gilchrist, Ph.D., offered opinions about Plaintiff's cognitive functioning following an examination and testing on May 24, 2021 and on June 3, 2021. Dr. Gilchrist opined that Plaintiff's performance on a number of memory measures was statistically below what one would expect, but stated that Plaintiff performed "quite well on tasks requiring attention and concentration and adequately on a task of reasoning and mental flexibility." (Tr. 26). He offered no opinions on social interaction limitations.

### C.  The ALJ's Mental RFC Findings

The ALJ considered all relevant evidence before formulating Plaintiff's mental RFC, including her subjective statements (which the ALJ discounted), her daily social interactions, ability to interact with other individuals on a sustained basis, descriptions that she was "cooperative" by the consulting psychologist, lack of social impropriety noted by any treating or consulting source, and her presentation at the hearing which evidenced "no appreciable social difficulty." (Tr. 20). The ALJ also considered the psychological opinions, finding each to be "generally consistent" and "persuasive" to an extent.

For example, the ALJ noted that although Dr. Gilchrist failed to explain how Plaintiff's memory impairment would impact her performance in a job environment, his opinions were "persuasive" to the extent they were "generally consistent with and … supported by the totality of the evidentiary record." (Tr. 28). Turning to Dr. Barwick, the ALJ pointed out that her lack of function-by-function analysis "renders her opinion less persuasive," and criticized her use of vague phrases such as "may impact social engagement." (*Id*.) Nevertheless, the ALJ concluded that Dr. Barwick's opinions on the whole were "generally consistent" and "persuasive to the extent… not inconsistent with the evidentiary record …and with the outcome of this decision." (*Id*.)

Last, the ALJ considered the two opinions at issue in this judicial appeal. The ALJ accurately quoted from Dr. Hill's RFC opinions on initial consideration that Plaintiff "was able to complete tasks with no strict production requirements; was capable of superficial interactions with supervisors and coworkers and no customer service duties; and able to work in a static environment with advanced warning of changes." (Tr. 27, citing Tr. 69-70). The ALJ explained that Dr. Johnston's narrative RFC opinions on reconsideration were somewhat more limiting:

8

> Dr. Johnston found the claimant was somewhat more limited with respect to concentration and persistence, as she found the claimant was also limited to only occasional decision making requirements. She also found the claimant somewhat more limited in her social interaction ability, as she found the claimant was limited to work in an environment with no contact with the public and only occasional interactions with coworkers and supervisors. Finally, Dr. Johnston found the claimant was more limited in her adaptation ability and opined that she was limited to work in an environment with no strict production requirements and only occasional decision making requirements and can adapt to settings with few changes.

(Tr. 27).

The ALJ agreed with both Dr. Hill and Dr. Johnston that Plaintiff has only moderate limitations in her ability to interact with others. (*Id.*) And, like the opinions of Drs. Gilchrist and Barwick, the ALJ found Drs. Hill and Johnston's opinions to be "generally" consistent and supported by the record at the time that each respective opinion was rendered (10/16/20 for Dr. Hill and 1/24/21 for Dr. Johnston). But the ALJ explained that she was not adopting either RFC opinion verbatim:

> [W]hile there are slight differences between the initial and reconsideration determinations, overall, the undersigned finds the opined limitations to generally be consistent with and supported by the evidentiary record at the initial and reconsideration levels. Thus, while they are persuasive, the undersigned has reframed the claimant's functional capacity above in order to use vocationally relevant terminology that the reviewing psychological consultants did not use in their opinions.

(Tr. 28).

In this appeal, Plaintiff complains that the ALJ did not adequately explain why she chose "occasional interactions" instead of Dr. Hill's phrase, "superficial interactions with supervisors and coworkers," and asserts that the failure to use "superficial" constitutes reversible error. The undersigned disagrees for three reasons: (1) Persuasive case law refutes Plaintiff's premise that a conflict exists between "occasional" and "superficial"; (2) Even if a reviewing court were to conclude that a judicially-crafted definition of "superficial" is inconsistent with the vocational definition of "occasional," the ALJ's explanation was

9

adequate and the RFC was substantially supported; and (3) Any error was harmless on the record presented.

### 1. The Vocational Definition of Occasional Interaction is not Conflict with the Meaning of Superficial Interaction

Plaintiff's appeal rests on the premise that when translated into a hypothetical RFC expressed in vocational terms, the adjective "occasional" is materially inconsistent or in conflict with the adjective "superficial." Based on that premise, Plaintiff reasons that the ALJ committed reversible error by failing to explain her omission of the word superficial. SSR 96-8p states that an RFC assessment "must include" an explanation of "how any *material inconsistencies* or ambiguities in the evidence… were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (1996) (emphasis added). SSR 96-8p also requires ALJs to "explain why" a medical opinion was not adopted if the ALJ's RFC assessment conflicts with an opinion from a medical source. *Id.*

The undersigned finds no error. Fundamentally, the undersigned disagrees with the premise that Dr. Hill's limitation to "superficial interactions" was inconsistent with either Dr. Johnston's RFC opinions or the ALJ's ultimate RFC findings. In support of her position, Plaintiff points to case law from this district that defines "superficial" as describing only the *quality* of social interaction while holding that "occasional" describes only the *quantity* of interaction. *See Hutton v. Comm'r of Soc. Sec.*, No. 2:20-cv-339-CMV-SDM, 2020 WL 4866855 (S.D. Ohio July 9, 2020), R&R adopted at 2020 WL 4334920 (S.D. Ohio July 28, 2020)); (Doc. 8, PageID 505, arguing that "[s]uperficial and occasional describe two distinct limitations."). Cases that ascribe to this view further hold that the judicially-defined "superficial interactions" is *inconsistent with* the Dictionary of Occupational Titles ("DOT") definition for "occasional" interactions.

But after a review of the pertinent case law, the undersigned disagrees. *See*, *generally*, *Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746-DRC-SKB, 2023 WL 4991918 (S.D. Aug. 4, 2023) (R&R pending) (extensively discussing the case law). Instead, the undersigned finds more persuasive decisions both within and outside of the Sixth Circuit that reject Plaintiff's underlying premise, as well as a Sixth Circuit case that squarely holds that the terms are *not inconsistent* when viewed in the highly regulated context of a vocational RFC finding. *See Reeves v. Comm'r of Soc. Sec.*, 618 Fed. Appx. 267, 275 (6th Cir. 2015).

The judicially-crafted definition of "superficial" in the vocational context did not originate in this district, but was adopted from several unpublished district court cases from the Seventh Circuit. See *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18-EAS-CMV, at *4, 2018 WL 6257432 (S.D. Ohio Nov. 30, 2018), R&R adopted 2019 WL 133177 (S.D. Ohio Jan 8, 2019). In a recent published decision, the Seventh Circuit has disavowed the reasoning of those earlier cases. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). More on that later. But in this district, *Hutton* explains the line of reasoning. There, the ALJ held that "superficial contact" is "not well defined and vocationally [relevant]," *id.* at *1, 4, and assessed an RFC that included "no public contact and occasional interaction with co-workers." *Id.*, at *2. *Hutton* reversed on the basis that "superficial" and "occasional" each have distinct and inconsistent vocational meanings:

> The problem with the ALJ's consideration of [the psychological] opinions regarding Plaintiff's social interaction limitations is that the terms "occasional" and "superficial" are not interchangeable. *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (citations omitted). Thus, <u>courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions - including a limitation to "superficial" interaction.</u>

11

* * *

> Put simply, in contrast to the ALJ's rejection of… [the opinions] that Plaintiff was limited to only superficial interactions as "not well defined and vocationally [relevant]," "superficial interaction" is a well-recognized, work-related limitation. …*See Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms…; *Cote v. Colvin*, No. 16-cv-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction").

*Id*. at *4-5 (emphasis added, collecting cases that hold that "superficial" has a different "qualitative" vocational meaning that cannot be equated with "occasional.").

Since *Hutton*, dozens of social security cases in the Southern District of Ohio - though not all - have adopted the same judicially-crafted definition of "superficial" interaction. Reasoning that "superficial" and "occasional" are inherently inconsistent in the vocational context, courts have reversed when an ALJ describes "superficial" as not vocationally relevant or translates that term to "occasional" in the RFC findings. *See*, *e.g.*, *William H. v. Comm'r of Soc. Sec.*, No. 3:21-cv-219-CHG, 2022 WL 4591304, at *4-6 (S.D. Ohio Sept. 30, 2022) (ALJ reversibly erred in rejecting superficial as not vocationally defined in light of S.D. Ohio case law that defines the term relative to social interactions); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-cv-3820-MHW-CMV, 2021 WL 3087639, at *5-6 (S.D. Ohio July 22, 2021) (same, holding that term has been defined "by *this Court's caselaw*" (emphasis added)), R&R adopted, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Garvin v. Comm'r of Soc. Sec.*, No. 2:20-cv-2566-EAS-EPD, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021) (describing ALJ's statement that "'superficial,' has been phrased in clearer or more vocationally relevant terms" as "untenable" because term "is a well-recognized, work-related limitation"), R&R adopted, 2021 WL 2533191 (S.D. Ohio June

21, 2021); *Crisp v. Comm'r of Soc. Sec.*, No. 2:19-cv-2401-MHW-CMV, 2020 WL 581841, at *3-4 (S.D. Ohio Feb. 6, 2020) (reversing based on ALJ's "inadequate" rejection of "superficial interactions" as "somewhat ambiguous"), R&R adopted, 2020 WL 5640056 (S.D. Ohio Sept. 22, 2020).

None of the cited cases, including *Hutton*, *supra*, discuss an earlier holding by the Sixth Circuit in *Reeves v. Comm'r of Soc. Sec*. that the definitions of "superficial" and "occasional" are <u>not inconsistent</u> in the specialized context of a vocational RFC finding. Reasonable jurists can disagree. Here, the undersigned finds the reasoning of *Reeves* and other cases to be more persuasive.

In *Reeves*, two psychologists opined that the plaintiff was "able to relate to a few familiar others on a superficial basis." *Id.,* 618 Fed. Appx. at 275. Despite assigning the most weight ("great weight") to their opinions, the ALJ translated the phrase into a limitation to "only occasional interaction." *See Reeves v. Colvin*, No. 3:13CV1425, 2014 WL 4675321, at *4, 8 (N.D. Ohio Sept. 18, 2014). Before both the district court and the appellate court, the plaintiff argued that the RFC limitation to "occasional interaction" was inconsistent with the "superficial" phrase. Although neither the lower court nor the Sixth Circuit engaged in lengthy discourse about the definitions of "superficial" and "occasional," both courts <u>explicitly rejected</u> the plaintiff's argument. *See Reeves v. Colvin*, 2014 WL 4675321, at *8 (N.D. Ohio Sept. 18, 2014) ("the ALJ's RFC assessment is consistent with the state agency psychologists' opinions, plaintiff's GAF scores, and plaintiff's testimony"); *accord Reeves*, 618 Fed. Appx.at 275.("the ALJ's mental RFC determination was supported by substantial evidence in the record and *is not inconsistent with either of the state agency psychologists' opinions*." *Reeves*, 618 Fed. Appx. at 275 (emphasis added). The appellate court further reasoned: "Even where an ALJ provides

'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Id.* (additional citation omitted). In other words, because the Sixth Circuit found no inconsistency in the vocational context, it viewed any distinction between "superficial" and "occasional" as irrelevant.

Many courts have found *Reeves* to be persuasive. A review of *Hutton* after remand highlights the split among jurists in this district alone. Following remand, the ALJ again rejected "superficial" as vocationally ambiguous. Plaintiff filed a second judicial appeal. In the second go-round, *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315-JLG-KLL, 2023 WL 1857822 (S.D. Ohio, Feb. 9, 2023), the court found no error in the ALJ's refusal to include "superficial" in the RFC on grounds it was not vocationally relevant. After reiterating that the ALJ alone and not this court is tasked with formulating the RFC, *see* 20 C.F.R. § 416.946(c), the court cited to *Reeves* and offered this reasoning:

> This matter was previously remanded because the ALJ failed to "consider whether Plaintiff did, in fact, require a limitation to only superficial interaction because he incorrectly concluded that such a limitation is either vague or was otherwise accommodated by limiting Plaintiff to only occasional interaction." … On remand, the ALJ again declined to include a limitation to "superficial" interactions since "[t]here is no one accepted definition of superficial in this context because it is not defined in the *Dictionary of Occupational Titles* (DOT) or its companion resources, rendering use of the term alone fraught with ambiguity." (Tr. 2190). However, the ALJ explained that, while not adopting the term "superficial," the RFC he crafted "nevertheless limits the quality of interaction: brief (quantity) interactions with supervisors and coworkers *sufficient to learn the simple, repetitive position and exchange appropriate work information without negotiation, persuasion, or conflict resolution* (quality)." … The ALJ further explained that the RFC "limitation itself describes to what extent [plaintiff] can interact with others in a work setting and thus defines the quantity of interactions in addition to limiting the quantity" and includes a limitation "related to the ability to tolerate change in the work setting." (*Id.*)
>
> Plaintiff objects to the ALJ's refusal to include a limitation to superficial interactions and contends that the ALJ's attempt to replace the term "superficial" with an ad hoc definition of the word "is entirely arbitrary" and

"renders the ALJ's definition of the term 'superficial' unreviewable." …The issue, however, is not whether the ALJ appropriately defined the word "superficial." Indeed, the ALJ is under no obligation to impose a superficial interactions limitation. *See Reeves*, 618 F. App'x at 275 (6th Cir. 2015). The issue is whether the ALJ explained the basis for the RFC determination. *See Hankinson v. Comm'r of Soc. Sec.*, 2020 WL 240812, at *2. The Court concludes that he did.

*Anissa H.*, 2023 WL 1857822, at *9, R&R adopted 2023 WL 2692415 (S.D. Ohio March 29, 2023)[3]; *accord Richard S. v. Comm'r of Soc. Sec.,* No. 2:22-cv-2176-EAS-KLL, 2023 WL 2805347, at *14 (S.D. Ohio, April 6, 2023) (citing *Reeves* and discussing disagreement in case law including lack of definition of "superficial" in the DOT or SCO, affirming because ALJ adequately defined the phrase in the RFC and "nitpick[ing] the ALJ's definition of 'superficial'" risks "invading the zone of choice within which the Commissioner operates") (additional citation omitted), R&R adopted 2023 WL 6318135 (S.D. Ohio September 28, 2023); *see also Stephen D. v. Comm'r of Soc. Sec.*, No. 1:21-cv-746-DRC-SKB, *supra*.

To be perfectly clear, the undersigned can agree that some dictionary definitions for the adjective "superficial" suggest that, when modifying the noun "interaction," the phrase refers to the depth or "quality" of interaction. Common synonyms for "superficial" include shallow, cursory or limited, generally meaning lacking in depth, while antonyms include "deep," "penetrating," and "profound." *See* https://www.merriam-webster.com/thesaurus/superficial (accessed on January 4, 2024). The undersigned also can agree that the term "occasional" is defined by the DOT in terms of "quantity" - meaning up to one-third of the workday. But a common dictionary definition and an RFC finding in the social security law context are two different things. And even Plaintiff concedes that

---

[3]The Court remanded a second time based on a different error related to ALJ's failure to consider the VA's disability determination.

"superficial" is *not* vocationally defined by the DOT or any vocationally relevant authority. (Doc. 10, PageID 530).[4]

The Social Security Act tasks the ALJ alone with formulating the RFC in vocational terms. Requiring an ALJ to use a judicially-crafted definition of "superficial" (which has been adopted by few courts outside of the Southern District of Ohio) ignores the highly regulated context of social security law and wrongly invades the ALJ's singular authority to formulate the RFC.

A close review of contextual meaning illuminates the false premise that the vocational meanings of "occasional" and "superficial" are always in conflict. In fact, it appears that they would rarely be inconsistent in the realm of unskilled work. "[T]he primary work functions in most unskilled occupations involve working with things (rather than with data or people)." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(i). Arguably, most unskilled work requires only "superficial" (shallow, cursory or limited) interactions with people. For example, "simple" and "routine" unskilled work is vocationally defined in the DOT to mean work that involves only 1-3 step instructions. Thus, the nature of that work is reasonably understood to require only surface-level interactions (such as a supervisor imparting short and simple instructions), and is highly unlikely to require qualitatively deep, penetrating or profound (i.e., non-superficial) conversations or interactions. In the <u>vocational</u> context, then, it is easy to understand why *Reeves* held that limiting an individual's frequency to "occasional" interactions in unskilled work was entirely

---

[4]As referenced in *Anissa H.*, the Social Security Agency could have defined "superficial" in vocational terms, if it had chosen to do so. The Social Security Act, as amended, along with Regulations, Social Security Rulings (SSRs), Acquiescence Rulings (ARs), the Program Operations Manual System (POMS), and the Hearings, Appeals, and Litigation Law Manual (HALLEX) all provide the basic guides for adjudication and review of Social Security claims by the Commissioner. Yet none of these sources dictate what an agency psychologist might mean by limiting a claimant to "superficial" interactions.

*consistent with* a limitation to "superficial interaction" – notwithstanding differences in their dictionary definitions.

The nuance of context is recognized in recent cases that have found no error when an ALJ assesses a vocational meaning for "superficial" interaction. For example, in *Sasha M. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2101-EAS-KAJ,  2023 WL 1793536, at *9 (S.D. Ohio, Feb. 7, 2023) (R&R adopted 2023 WL 6383450 (S.D. Ohio Sept. 29, 2023), the court explained:

> "Superficial" social interaction has no regulatory definition. And while the state agency psychologists opined Plaintiff should be limited to superficial interactions, neither defined what "superficial" meant. Accordingly, precisely how the RFC's limitations differ from superficial interaction limitations - if they do at all - is unclear. Still, even if the depth of interaction described in the RFC exceeds "superficial" interaction, the ALJ was not required to adopt the state agency psychologists' opinions in their entirety.

*Id*.; *see also Andrea B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-055-KAJ, 2023 WL 128288, at *7 (S.D. Ohio, Jan. 9, 2023) (affirming because "no regulation from the Social Security Administration requires an ALJ to analyze superficial interactions a specific way" and the "heart of the case law" emphasizes adequate explanation, "not the need…to include buzz words like 'superficial interactions' in order to avoid remand."); *Angela K. v. Comm'r of Soc. Sec.*, No. 1:21-cv-088-MRB-SKB, 2022 WL 3151890, at *3 (S.D. Ohio, Aug. 8, 2022) (rejecting claim based on ALJ's failure to adopt Plaintiff's restrictive definition of "superficial" interaction because "neither the DOT nor controlling case law defines the meaning of that term" but remanding on other grounds), R&R adopted 2022 WL 3701576 (S.D. Ohio Aug. 26, 2022); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467-TSB-KLL, 2021 WL 5577405 (S.D. Ohio, Nov. 30, 2021), R&R adopted 2022 WL 1183234 (S.D. Ohio April 21, 2022) (rejecting argument that ALJ's translation of "superficial" interaction into the "vocationally relevant" terminology of "occasional" was improper); *May v. Comm'r*

*of Soc. Sec.*, No. 3:19-cv-47-WHR-SLO,  2020 WL 103579, at *5 (S.D. Ohio Jan. 9, 2020) (finding no error where ALJ stated he did not use "superficial" contact because the DOT does not define it, and went beyond "occasional" contact by including no contact with the public), R&R adopted 2020 WL 1227208 (S.D. Ohio March 13, 2020).

Sister courts within the Sixth Circuit similarly reject the premise that "superficial" is a vocationally defined term with a fixed "qualitative" meaning that is inconsistent with "occasional" in an RFC finding. Under this view, an ALJ reasonably may interpret a limitation to "superficial" interaction as excluding only deeply involved or emotional conversations with supervisors and coworkers, and find that limitation to be consistent with "occasional" interaction in the vocational context of simple and routine unskilled work. As explained in a recent Northern District of Ohio case:

> Some courts have gone so far as to reject the explanation that "superficial" is not a vocationally relevant term, and have described "superficial" interaction as a "well-recognized, work-related limitation." …The undersigned disagrees, and finds on the contrary that it is of very direct and specific import to the issues presented in this case that "superficial" interaction does not have a defined meaning under the DOT or SCO. It is also notable that dictionary definitions do not provide further clarity as to what work-related interactions are intended to be included or excluded by a limitation to "superficial" interactions. *See, e.g.,* "Superficial." *Merriam-Webster's Unabridged Dictionary, Merriam-Webster*, https://unabridged.merriam-webster.com/unabridged/superficial. Accessed 11 Jan. 2022 ("not penetrating beneath or farther than the easily or quickly apprehended features of a thing: concerned only with the obvious or apparent"; "lacking in depth or substantial qualities: not profound"; "presenting only an appearance or a semblance: not far-reaching, significant, or genuine").
>
> Given the lack of a defined meaning for the term "superficial," it is not clear from the record what specific manner of communications the psychological consultants intended to permit or exclude…. More importantly, if the ALJ had posed a hypothetical question limiting Ms. Beulah to "superficial interactions,"…SSA guidance suggests that it would have been improper

18

for the ALJ to simply adopt that limitation without articulating a clear definition of the term on the record….

*Beulah v. Comm'r of Soc. Sec.*, No. 1:20-cv-2271, 2022 WL 1609236, at *30-31 (N.D. Ohio March 25, 2022) (internal citations omitted), R&R adopted 2022 WL 1606286 (N.D. Ohio May 20, 2022). Kentucky and Michigan courts have reached comparable conclusions. *See Tara  B. v. Comm'r of Soc. Sec.*, No. 0:22-CV-065-CHB, 2023 WL 4274955, at *5-6 (E.D. Ky. June 29, 2023) (finding no error because "superficial" is not defined by regulations or the DOT, and the ALJ's use of  "occasional" was "sufficiently qualitative");[5] *Hammons v. Comm'r of Soc. Sec.*,  No. 21-12933, 2023 WL 2446163, at *5 (E.D. Mich. Jan. 23, 2023), R&R adopted 2023 WL 2263856 (E.D. Mich. Feb. 28, 2023) (noting reliance on *Reeves* was "not necessarily misplaced," declining to follow contrary Southern District of Ohio cases and holding that the Commissioner adequately addressed the quality of contact); *accord Stoodt v. Comm'r of Soc. Sec.*, 2022 WL 721455, at *16-17 (N.D. Ohio Jan. 13, 2022), (disagreeing with case law that describes "superficial interaction" as a "well-recognized, work-related limitation" and pointing out that VE testimony must be based on the information in the DOT, the SCO, or his/her expertise, but reversing on other grounds), R&R adopted 2022 WL 716105 (N.D. Ohio March 10, 2022).

The above discussion reflects disagreement among the judges of this district and among other courts within the Sixth Circuit in the unpublished caselaw. But published

---

[5]In *Tara B.*, the court evaluated two alleged disability periods, finding no error in the RFC as determined for the first period based in part on the ALJ's assessment that Plaintiff was limited in the quantity of interaction to "occasional" and in the quality of time to "no tandem or shared tasks, no over-the-shoulder supervision, and no customer service work." *Id.* at *5. But for the second period, the *Tara B.* court explicitly rejected the premise that "only occasional social interaction does not sufficiently account for the psychological consultants' _qualitative_ limitation to only 'superficial'" interactions, citing *Reeves* as authority that "this limitation, on its face, is sufficiently qualitative." *Id*. at *6 (emphasis added).

case law from other circuits also is persuasive. Relevant here, the Seventh Circuit recently distinguished the case law that underlies *Hutton* and rejected its premise that ordinary words have a fixed vocational meaning that binds an ALJ tasked with assessing a plaintiff's RFC. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

In *Shaibi v. Berryhill*, 883 F.3d 1102, 1106-07 (9th Cir. 2017), the Ninth Circuit similarly rejected the argument that "occasional" interactions is inconsistent with the term "superficial." There, a psychologist had offered a "superficial" limitation, and plaintiff argued that it was a "qualitative" limitation that the ALJ mistakenly evaluated as a "quantitative" limitation. The Ninth Circuit disagreed with the premise that the terms were inconsistent in the vocational context. "The ALJ could reasonably have concluded that, given Shaibi's ability to "relate to others on a superficial work basis," he could perform essential workplace functions, even if he could not easily develop deeper emotional bonds with his coworkers." *Id.*, 883 F.3d at 1107. Thus, *Shaibi* highlights how the vocational meaning of "superficial" is often subsumed by and consistent with a limitation to "occasional" interaction. *Accord Quintanilla v. Berryhill*, No. CV 16-01043-DFM, 2017 WL 1433306, at *4 (C.D. Cal. April 21, 2017) ("Given that the ALJ limited Plaintiff to carrying out 'simple' instructions, performing 'simple, routine, and repetitive tasks,' and 'occasional interaction with coworkers and supervisors,' it follows that such interaction would be brief and superficial").

The undersigned finds the Sixth, Seventh and Ninth Circuit decisions in *Reeves*, *Reynolds*, and *Shaibi* to be highly persuasive, as well as the referenced district court cases that follow *Reeves.* The undersigned therefore finds no error in the ALJ's use of "occasional interactions" (endorsed by Dr. Johnston) and omission of Dr. Hill's phrase of "superficial interactions." In the vocational context of an RFC finding, the terms are not

inconsistent. And the ALJ adequately explained that her assessment of Plaintiff's mental RFC was expressed in "vocationally relevant" terms.

### 2. Even if a judicially-crafted definition of "superficial" is adopted, the ALJ accommodated Plaintiff's limitations in this case

Even if a reviewing court were to insist on a separate "qualitative" definition of "superficial" in the vocational context, the undersigned still would find no error. While Dr. Hill limited Plaintiff to "superficial interactions," she did not otherwise define that term and placed no time limits on the quantity of "superficial" interactions with coworkers and supervisors. On reconsideration, Dr. Johnston phrased Plaintiff's limitations differently, limiting her to "occasional interactions" with coworkers and supervisors, and including a limitation to no public contact. Consistent with Dr. Hill, Dr. Johnston also added other limitations that touch upon the "quality" of interactions including limits on decision making and changes in the work setting.

The Sixth Circuit has made clear that in fashioning the RFC, an ALJ is not required to use "the exact language" of medical professionals." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 436 (6th Cir. 2014) (explaining that "[a]lthough the ALJ did not describe Smith-Johnson's limitations using the exact language of those professionals, substantial evidence demonstrates that the ALJ adequately portrayed her limitations in his RFC and the hypothetical question to the VE."). Therefore, the ALJ was not required to use the word "superficial." *See Reeves*, 618 Fed. Appx. at 275 ("there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim" or "wholesale"); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. 2009).

The ALJ found both reviewing psychologists' opinions to be "generally" consistent and supported by the record. After calling out distinctions, the ALJ explained that she was

rephrasing limitations offered by both psychologists. Courts generally affirm when an ALJ translates "superficial" into vocational terms or phrases that the ALJ finds to better represent the plaintiff's RFC limitations. *See*, *e.g.*, *Latisha D. B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3875-SDM-KLL, 2023 WL 4727000, at *4-5 (S.D. Ohio July 25, 2023), R&R adopted 2023 WL 5531611 (S.D. Ohio Aug. 28, 2023) (holding that no tandem tasks and no customer service responsibilities was a reasonable vocational translation of the phrase "superficial interaction").

In her reply memorandum, Plaintiff complains that the ALJ "did not identify which phrases that she was translating into "vocationally relevant terms" and that "[t]here is no way of knowing whether the ALJ … needed to translate" the psychological opinions. (Doc. 10, PageID 526-527). But even Plaintiff concedes that "occasional" is defined by the DOT while "superficial" is not. And no regulatory authority or case law requires an ALJ to painstakingly explain how and why she has translated each word of a medical opinion. An ALJ may choose any terms she wishes in lieu of "verbatim" phrasing, so long as the RFC as determined is substantially supported by the record as a whole. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7.

Here, the ALJ incorporated multiple "qualitative" limitations that reasonably encompassed both reviewers' opinions, including Dr. Hill's "superficial interaction" limitation. The ALJ began by limiting Plaintiff to "simple routine" unskilled work not set at assembly line pace, an environment that involves simple 1-3 step instructions and generally would not involve deep emotional conversations with coworkers or supervisors. The ALJ then added qualitative limitations not explicitly endorsed by either psychologist, specifying how instructions were to be conveyed ("more verbal or demonstra[tive]") and eliminating "tandem work" with coworkers or supervisors. (Tr. 22). The ALJ included

22

limitations to "no work with the general public" with "only occasional changes in the work setting and only occasional decision making." (*Id*.) And the ALJ placed a time limit ("occasional") on interactions with supervisors and coworkers.

The undersigned finds the RFC to be substantially supported by all evidence in the record including but not limited to both psychologists' opinions, (*see* Tr. 20), because it includes limitations that relate to both the "quality" and the "quantity" of interactions. *See generally*, *Hammons v. Comm'r of Soc. Sec.*, 2023 WL 2446163 at *5 (Commissioner adequately addressed the quality of contact by limiting plaintiff to no tandem tasks); *Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-cv-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022), *R&R adopted*, 2023 WL 246884 (W.D. Mich. Jan. 18, 2023) (limitations of "no interaction with the public, occasional interaction with supervisors and coworkers, and no tandem or cooperative tasks" represented "significant limitations ... on the quality of the interaction, essentially amount[ing] to no more than superficial contact with supervisors and coworkers"); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467-TSB-KLL, 2021 WL 5577405 (affirming in part because the ALJ acknowledged the term "superficial" and interpreted its meaning by precluding plaintiff from tandem or shared tasks or from working in a customer service capacity); *May v. Comm'r of Soc. Sec.*, No. 3:19-cv-47-WHR-SLO, 2020 WL 103579, at *5 (finding no error where ALJ went beyond "occasional" contact by including no contact with the public); *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670-JLG-EPD, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020) (no tandem tasks was sufficiently qualitative to address limitation to superficial interaction with others), R&R adopted 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020).

In her reply memo, Plaintiff raises a new argument that the limitation to "no tandem work" is insufficient because supervisors would be "supervising" and "not be engaging in

23

tandem tasks with their employees." (Doc. 10, PageID 529). That assumption is overly speculative in the context of unskilled work. Regardless, the multitude of limitations that the ALJ included, as a whole, appropriately take into account Dr. Hill's limitation to "superficial limitations" with both coworkers and supervisors. *See also Latisha D.B. v. Comm'r*, 2023 WL 4727000, *6 (rejecting the same argument, citing cases that hold that a limitation on tandem tasks is sufficient).[6]

This Court must affirm even if an alternative RFC would have been substantially supported, so long as the RFC limitations as determined were within the "zone of choice." The ALJ's analysis here falls well within that zone.

### 3. Harmless Error Analysis

As an alternative basis for affirming the Commissioner's decision, the undersigned finds any error to have been harmless. Courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005).

The DOT and SCO provide insight for an ALJ tasked with determining the RFC. Although the DOT does not use the word "superficial," it identifies and numerically orders

---

[6]*Latisha* also rejected the argument because the plaintiff presented it for the first time in reply and not in response to the Commissioner's arguments. *Id.* (citing *Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No. 1:10-cv-813, 2012 WL 213801, at *11 n.1 (S.D. Ohio Jan. 24, 2012), *report and recommendation adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, 2012 WL 481787 (S.D. Ohio Feb. 14, 2012) (holding that a moving party may not raise new issues for the first time in its reply brief)).

nine types of people interactions.[7] *See Selected Characteristics of occupations defined in the revised Dictionary of Occupational Titles* ("SCODICOT") Appendix E; *see also Reese v. Saul,* No. 3:18-CV-442-HBG, 2020 WL 1312703, at *14 (E.D. Tenn. Mar. 19, 2020) ("the 'DOT ranks the degree of interaction with people in each job type' on a scale from 0 (Mentoring) to 8 (Taking Instructions-Helping), going from the highest to the lowest level of functioning"). Whereas the DOT description for "mentoring" requires a good deal of interaction, the description tor "Taking Instructions-Helping" (level 8) only requires:

> Attending to the work assignment instructions or orders of supervisor. (*No immediate response required unless clarification of instructions or orders is needed.*)  Helping applies to "non-learning" helpers.

*Id*. (emphasis added).

The ALJ determined that Plaintiff could perform work in two positions (warehouse checker and marker) for which the DOT rates the level of social interaction as a "People level 8," described as "not significant." Many courts agree that unskilled occupations with a social interaction level of "8" can be performed even by individuals with a limitation to "superficial" interactions. See *Holloman v. Comm'r of Soc. Sec.*, 639 Fed. Appx. 810, 816 (3d Cir. 2016) (affirming in part because DOT strongly suggested the relied-upon occupations "require little, if any, social interaction"); *Oliver v. Kijakazi*, 2022 WL 55017, at *12 (M.D. Pa. Jan. 5, 2022) (identified jobs all had a people code of 8 which suggests they require little interaction with others); *Simpson v. Colvin*, 2015 WL 5313724, at *21 (E.D. Mo. Oct. 16, 2014) ("Level 8 interaction is compatible with an RFC limiting a claimant

---

[7] https://occupationalinfo.org/appendxb_1.html (listing in numerical order, mentoring, negotiating, instructing, supervising, diverting, persuading, speaking-signaling, serving, and taking instructions-helping). (accessed on January 5, 2024).

to only superficial contact…."); *Connor v. Colvin*, 2014 WL 3533466 , at \*4 (D. Me. July 16, 2014) (same).

Without distinguishing this body of case law, Plaintiff protests that language in the DOT suggests that the numerical order of the "People" levels "can be considered a hierarchy only in the most general sense," meaning that each job requires a "case specific determination." (Doc. 10, PageID 530). But it is Plaintiff's burden to prove that she has been prejudiced. Not only does Plaintiff fail to show that she could not perform the identified jobs, her argument ignores that the referenced jobs involve unskilled, routine work dealing primarily with objects, not people. See *Quintanilla*, 2017 WL 1433306, at \*4 (because unskilled work deals primarily with objects, and DOT ratings for jobs were "not significant" for dealing with people, the failure to limit the plaintiff to "superficial" interaction with coworkers and supervisors was inconsequential to the outcome."). Therefore, the adoption of a "superficial" limitation would not have altered the decision. *Accord Francis v. Comm'r of Soc. Sec*., No. 2:17-cv-1022-GCS-CMV, 2018 WL 4442596, at \*6 (S.D. Ohio Sept. 18, 2018), R&R adopted, 2018 WL 4932081 (S.D. Ohio Oct. 11, 2018) (failure to adopt "superficial" was harmless because five of the six jobs required only limited relationships where interaction with others was "not significant" based on DOT descriptions); *Cissner v. Berryhill*, No. 3:16-cv-121-SLO, 2017 WL 3821461, at \*10 (S.D. Ohio Sept. 1, 2017) (same, finding harmless error based on DOT People rating of 8 and because unskilled jobs "relate to working with things (rather than data or people)").

### III. Conclusion and Recommendation

Because the Commissioner's decision reflects no legal error and is supported by substantial evidence, **IT IS RECOMMENDED THAT** the decision be **AFFIRMED** and that this case be **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MELINDA R.,                                              Case No. 2:23-cv-1090

        Plaintiff,                          Morrison, J.
                                                        Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).